Welch, J.
The original action was by Martha Pollock, now Mrs. Brown, against “Adams & Co.,” by their company name alone, and the summons was served by copy left at their office in Cincinnati.
The petition alleges that she deposited with one Mowton, an agent and member of the company, and acting on their behalf, at. *69 their office in Cincinnati, the sum of $4,581.68 in gold, tobe by the company invested for her, or returned with interest, and took from the agent a written contract to that effect, as follows:
“ Cincinnati, April 9,1852.
“ Received of Miss Martha Pollock, forty-five hundred and eighty- ' ■one 68-100 dollars, to be invested in security, such as bond and mortgage on real estate, at 10 per cent., for a time of two years, •otherwise six per cent, interest to be allowed.
“$4,581.68. Adams & Co.”
She then alleges that the company have failed to make the investment, and refuse to restore the money, and she seeks to recover ■the amount with interest.
*The answer to this petition (though, like the petition in •error here, standing in the name of “Adams & Co.”) is in fact not put in by “Adams & Co.,” but by another firm, consisting mainly of the same individuals, calling itself “Adams & Co.’s Western Express.” The answer admits the-receipt of the gold and the execution of the paper by Mowton, and that he was the agent of both companies; but it denies that Mowton was a partner, or that the transaction was within the scope of the legitimate business of the latter company, and insists that the written contract, not being in their name, does not bind them, and was not their contract.
The case came into the district court by appeal. It was there twice tried upon these issues by a jury, the result in each case being (as had been the result of a single trial in the common pleas) a verdict for the plaintiff. Upon the final hearing a motion for a new trial was overruled, and judgment was entered upon the verdict; and the principal question presented by the assignment of errors here is, Did the court err in overruling the motion for a new trial?
The record contains one hundred and fifty-three pages, including a bill of exceptions of one hundred and thirty. The essential facts of the case, as gathered from this record, are briefly as follows :
At the time of the transaction with Miss Pollock, there were two express companies, composed in part, and principally, of the same individual members, having a common branch office in Cincinnati, which was kept by their common agent, Mr. Mowton. One of these companies was the original firm of “Adams & Co.,” never using or known by any other name, and having its principal office at Phil *70 adelphia, with branch offices in California, Cincinnati, and other places. The other company had its principal office at Pittsburg, and was known to its own members, and to those who were aware that it was a separate and distinct company, by the name of “Adams & Co’s Western Express.” The name of the latter company alone was upon the sign over the' Cincinnati office; but its business was transacted, as well in the name of “Adams & Co.” and “Adams &. Co’s Express,” as in its own proper name.-
*Miss Pollock had delivered to Adams Express Co., in California, 14,000 in gold, to be carried for her to Philadelphia. In March, 1852, she came to the office in Cincinnati, and surrendered to Mowton the bill of lading for the gold, and took from him another bill of lading, for the transportation of the gold from Philadelphia to Cincinnati. Whether this latter bill was in the name of 11 Adams & Co.,” or of “ Adams & Co.’s Western Express,” does-not appear from the record; but it was the latter company that in fact carried the gold from Philadelphia to Cincinnati. Upon its-arrival at Cincinnati, it was arranged between Miss Pollock and Mr. Mowton, that “the company ” (without saying which) should keep-the gold, with an additional amount then advanced by her, making, in all the $4,581.68 on deposit, to be invested by “ the company ” for her as stated in the contract, or to be returned to her, with six per cent, interest, if not so invested ; and the written contract was executed by Mowton accordingly, and the bill of lading delivered up to him'.
At the time of these transactions, Miss Pollock supposed there-was but one company, and that its name was “ Adams & Co.,” and had no intimation to the contrary by Mowton, who professed to bean agent, as well as a member of the firm. The transaction was bona fide on her part, and she supposed it was within the usual and legitimate business of the company.
Much of the testimony is upon the question whether Mowton was a partner in the firm of Adams & Co.’s Western Express. This-is all rendered immaterial, by the admitted fact that he was a general agent, and as such had all the powers of a partner.
Admitting, however, the general power of .Mowton to bind the defendants within the scope of their legitimate business, the plaintiffs in error insist that they are not bound by the contract, and that-, therefore, the verdict of the jury was against the law and the-evidence, on two grounds: 1. Because the transaction was not *71 within the scope of their legitimate business; and 2. Because it was not made in their name.
We think that, under the circumstances, the defendants are-bound, if the transaction was within the legitimate business, *and in the name of either company. As to whether it was within the business of Adams & Co.’s Western Express, there is a, large mass of evidence. We need notice it no further than to say,, it does not satisfy us that the three juries erred in giving affirmative answers to the question. Much less can we find, upon this-evidence, that the transaction was not within the known and usual business of the other company. Indeed this seems not to be seriously denied by the counsel for the plaintiff in error. If such was the fact, the defendant should be held liable upon the contract, and the verdict of the jury should be sustained.
Had Miss Pollock known the distinctive business and names of those two companies; or had her ignorance been the result of her own fault or folly, or free from fault on the part of defendants, the case would have been different. But such were not the facts. In her eyes both companies were one and the same. To her understanding, the name of one was the name of each, and the business of either was that of both. If this was- a rais-understanding, it was a misunderstanding induced by the acts of the defendant, and probably shared in by the public generally. The companies being composed in part of the same individurls, each is presumed to be cognizant of the business and name of the other. If the new company did not intend to-deceive and mislead the public, such was at least the effect of their acts. They can not act in the name of one company, and do the business of that company, and then fall back upon the rights and immunities of the other. They are estopped from so doing. The firm of Adams & Co. seems to have been one of long standing, widely and favorably known to the business community, and for that very reason its name was adopted and used by the other company, as admitted by one of the partners, for the purpose of securing patronage. If they take the benefits of that name, they should also take its burdens. That they did virtually assume its name is undeniable. They not only assumed it directly, by its occasional use in the transaction of their business, but what was, perhaps, more calculated to mislead, they adopted for themselves a new name, which, when used, might be taken for the old one. For what is “Adams & Co.’s Western *Exvress ” but the *72 Western Express of “ Adams & Co. ?” It might be so read, and •doubtless was so read by many, if not by most people. It was so read by Miss Pollock; and to her it was only confirmation of what .she was told by Mowton—that she was dealing with “Adams & Co.,” and with them alone. I do not wonder at her mistake. I fell into the same mistake in the case, as she did in the contract. T could not see—and I can not yet clearly see—why the defendants answered at all. Their defense is, that the suit is upon a contract made by Adams & Co. Yery well—so is the suit against Adams ,& Co. If Adams & Co.’s Western Express did not contract, then they were not sued. The summons was served at the office of Adams & Co., and upon Adams & Co. only. Why, then, not stand aloof and let judgment by default go against Adams & Co.? The contract, suit, and service were all in the same name. How, then, •can the judgment harm Adams & Co.’s Western Express?
The truth is, there was in effect, if not in intention, a mystification and suppression of facts, which justifies Miss Pollock, and parties situated as she was, in looking to either company for indemnity, .and estops both from denying the name or business of each other. We, therefore, see no reason why the verdict of the jury should be •disturbed.
There is another error assigned. The plaintiff in error, on cross-examination of a witness, called to prove the extent of the business of express companies, asked him if he “ had ever heard ” of a contract like this being made by such a company. On objection to the •question, it was ruled out by the court as incompetent, and the plaintiff in error excepted. We think the court was right. The .answer, if negative, would have been useless; and if affirmative, it would have been mere hearsay. As mere matter of impeachment it was not admissible, because the witness had only testified of his knowledge, and not of his information.
Upon the whole we see no error in the record, and the judgment of the district court must be affirmed.

Judgment affirmed.

Brinkerhorr, C. J., and Scott, Bay, and White, JJ., concurred.